# EXHIBIT 6

Karen Sellers
Executive Director
karen.sellers@ky.gov



Richard House
Assistant Director
Richard.House@ky.gov

Taylor Brown
General Counsel
TaylorA.Brown@ky.gov

COMMONWEALTH OF KENTUCKY

# STATE BOARD OF ELECTIONS

*via USPS and email*

August 29, 2025

Michael E. Gates
Deputy Assistant Attorney General
U.S. Department of Justice, Civil Rights Division
950 Pennsylvania Ave, NW – 4CON
Washington, DC 20530
Michael.Gates2@usdoj.gov

Mr. Gates,

As promised in my letter to you from last week, dated August 21, 2025, below you will find responses to your department's questions from your July 17, 2025 correspondence related to the Kentucky State Board of Elections' ("SBE") submissions to the most recent EAVS report.

1).  The recent history of the relationship between Kentucky's total voter registration numbers and its citizen voting age population is well illustrated in *Judicial Watch, Inc. v. Grimes, et al., 3:17-cv-00094*, a lawsuit to which the DOJ was a party.  In the years since, Kentucky has vigorously undertaken a general program for removing ineligible voters from the Commonwealth's voter rolls.  The program has removed more than 756,000 ineligible voters since 2019 and has been so successful that the DOJ filed a Statement of Interest supporting SBE's voter list maintenance efforts in a recently filed challenge to the state's program (*Kentuckians for the Commonwealth v. Adams, et. al. 3:24-cv-00387*).  For more details on Kentucky's program, please see SBE's website at: https://elect.ky.gov/Resources/Pages/List-Maintenance.aspx.

2).  Kentucky does regularly check for incomplete registrations that are duplications of existing complete and valid registrations.  The removal of duplicates from the state's Voter Registration System occurs at the county level.  On a day-to-day basis, counties are responsible for identifying and removing complete and valid registrations, that are, per the survey's instructions, "submitted by persons already registered to vote at the same address, under the same name and personal information (e.g. date of birth, social security number, driver's license), and with the same political party."  Because this day-to-day process relies on the human clerk or deputy to manually recognize the existing and conflicting identifiers, once a year SBE digitally analyzes the state's voter rolls for potential duplicate registrations and directs the counties to review these and purge as necessary.  Kentucky's responses to question A3d indicated a response of "Does Not Apply" in part, because the Microsoft Excel template provided by Fors Marsh, and required, to answer the survey was pre-marked with the response.   For numbers that can be considered responsive to the question asked by the survey, please see SBE's website at: https://elect.ky.gov/Resources/Pages/List-Maintenance.aspx.

140 WALNUT STREET
FRANKFORT, KY 40601-3240

AN EQUAL OPPORTUNITY EMPLOYER M/F/D
www.elect.ky.gov

PHONE (502) 573-7100
FAX (502) 573-4369
OR (502) 696-1952

Kentucky also has a process for merging voter records that is initiated at the state level after a request from a county to do so. Once the record is merged in the Voter Registration System by SBE, the county is then asked to confirm that the record is accurate. SBE does not track how many registrations are merged, therefore, the response to A13a "Data Not Available" was recorded pursuant to the survey's instruction "if your jurisdiction does not track this data, report Data Not Available."

3). A voter registration application in Kentucky can find itself in the column "invalid or rejected registrations (other than duplicates)" for numerous reasons, two of the most common being that the wrong county was initially listed at one of the state's relatively new regional driver's license issuing offices, or from a voter making numerous and repeated attempts to view their voter registration on the Commonwealth's online self-service voter registration portal. A voter may access the portal at any time; if no changes are made to the application for registration by a voter accessing the portal, it is recorded as an application that has no changes made to the existing registration and is therefore rejected.

4). "Confirmation notices" are defined conflictingly in the EAVS report instructions as both "notice[s] mailed to a voter to confirm changes made to their information in a database of registered voters," and "notices…sent pursuant to NVRA Section 8(d)(1)(B) [sic] and Section 8(d)(2)." The 97,539 "confirmation notices" listed reflect the number of postcards sent by Kentucky pursuant to sections 8(c)(1) and 8(d)(2) of the NVRA only. Counties in Kentucky are not asked to track the category under which a "confirmation notice" is returned and therefore, Kentucky's response to these questions on the survey was in line with the instructions for A10, that declare: "if your state or jurisdiction sends confirmation notices but does not track data on how many are sent or the outcome of those confirmation notices, then your response should be "Data not available." Likewise, as to specific reasons "confirmation notices" are sent, asked for in A11, since Kentucky does not collect this information, our response of "Does Not Apply" was pre-marked on the Fors Marsh-provided Microsoft Excel template required to answer the survey.

5). Differences between the percent of "confirmation notices" sent by Kentucky as compared to other states is likely attributable to the use of the phrase "confirmation notices" in the EAVS report. There are the notices described in the survey's instructions as "[a] notice mailed to a voter to confirm changes made to their information in a database of registered voters," which can be communications such as those described in KRS 116.0452(2), as well as those described in the survey's instructions as those notices sent under sections 8(c)(1) and 8(d)(2) of the NVRA. Given the context of the questions presented by the survey, Kentucky did not include the former in its EAVS response, though it is likely that some states did. For an explanation of Kentucky's process for determining when to send either of these notices, please see the above-referenced Kentucky Revised Statute, as well as SBE's website at: https://elect.ky.gov/Resources/Pages/List-Maintenance.aspx.

6). Assuming that you are referring to the notices sent under sections 8(c)(1) and 8(d)(2) of the NVRA, an explanation of how Kentucky uses the "confirmation notice process" to remove ineligible voters from our voter rolls can be found on SBE's website at: https://elect.ky.gov/Resources/Pages/List-Maintenance.aspx.

Sincerely,

Karen Sellers
Executive Director
Kentucky State Board of Elections