**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>　　　　　*Plaintiff*,<br><br>v.<br><br><br>MICHAEL ADAMS, in his Official Capacity As KENTUCKY SECRETARY OF STATE and as CHIEF ELECTION OFFICIAL for the KENTUCKY STATE BOARD OF ELECTIONS; ROSS OWENS, III in his Official Capacity as KENTUCKY STATE BOARD OF ELECTIONS MEMBER; ERIC FARRIS in his Official Capacity as Kentucky STATE BOARD OF ELECTIONS MEMBER; JOHN BROWN, III, in his Official Capacity as KENTUCKY STATE BOARD OF ELECTIONS MEMBER; SUE PERRY in her Official Capacity as KENTUCKY STATE BOARD OF ELECTIONS MEMBER; DEANNA BRANGERS in her Official Capacity as KENTUCKY STATE BOARD OF ELECTIONS MEMBER; Cory Skolnick in his Official Capacity as KENTUCKY STATE BOARD OF ELECTIONS MEMBER; DWIGHT SEARS in his Official Capacity as KENTUCKY STATE BOARD OF ELECTIONS MEMBER; JULIE GRIGGS in her Official Capacity as KENTUCKY STATE BOARD OF ELECTIONS MEMBER,<br>　　　　　*Defendants*. | Case No: 3:26-cv-00019-GFVT |

**PROPOSED INTERVENING DEFENDANT, JEFFERSON COUNTY CLERK,**
**DAVID YATES' MOTION TO DISMISS**

The Jefferson County Clerk, Charles David Yates ("David Yates" or "Clerk Yates"),

pursuant to FRCP 12(b)(6), respectfully moves this Court to dismiss the Complaint in its entirety

1

because the action is legally unauthorized, and contrary to federal and state law. In support of his motion, Clerk Yates states the following:

## INTRODUCTION

The Plaintiff seeks an extraordinary order compelling production of Kentucky's complete, unredacted statewide voter registration list, including highly sensitive personal identifiers such as partial Social Security numbers and driver's license numbers. Fortunately for all Kentucky voters and future voters, the Complaint rests on a fundamental legal defect: no federal statute authorizes the Plaintiff to compel disclosure of protected personal data in violation of other federal privacy laws and state confidentiality statutes.

Pursuant to KRS 116.045, Clerk Yates is required to collect voter registration information in Kentucky's most populated county, Jefferson County, meaning that the information sought by the Plaintiff is in part collected, updated and maintained by Clerk Yates and his predecessors. This gives Clerk Yates a duty under state law to protect this data. Clerk Yates does not wish to belabor the well-made points of the Kentucky State Board of Elections ("BOE") and Intervening Defendants The League of Women Voters of Kentucky, The New Americans Initiative, Zitsi Mirakhur, and Joern Soltau, ("ACLU Defendants")[1] therefore, Clerk Yates adopts and incorporates their motions to dismiss herein. [DN 8-6; DN 9]. Clerk Yates writes separately only to make additional arguments significant to his role as Jefferson County Clerk.

Because the Complaint seeks relief that is contrary to law, it must be dismissed.

## ARGUMENT

I. Title III Does Not Apply to Complete Voter Registration Lists

---

[1] These parties are collectively represented by the American Civil Liberties Union ("ACLU") Foundation, therefore, for the sake of brevity, Clerk Yates will refer to them as "ACLU Defendants".

Plaintiff is not entitled to a complete and unredacted voter registration list, including the Social Security and/or driver's license numbers of over 3 million Kentuckians under Title III of the Civil Rights Act.[2] 52 U.S.C § 20703. In addition to the arguments made by the BOE and the ACLU Defendants, the language of Title III cannot include voter registration lists as this reading would create an inconsistency in federal law.

Section 20702 of Title III prohibits "[a]ny person" from willfully destroying or altering any record that Section 20701 requires states to retain or preserve. If the Court were to adopt the Plaintiff's proffered reading of Section 20701 to include complete voter registration lists, then Section 20702 certainly applies to prohibit the alteration of a voter registration list. However, the Help America Vote Act ("HAVA") *requires* states to continually alter voter registration lists by purging individuals who are ineligible to vote and duplicate entries. *See* 52 U.S.C § 21083(a)(1)(A)(2); 52 U.S.C. § 21083 (a)(1)(B)(iii). Additionally, the National Voter Registration Act of 1993 ("NVRA") requires election officials to update registration records with new address information. 52 U.S.C. § 20507(c)(1)(B)(i). Certainly, Congress did not intend to compel and prohibit the same action. Thus, it is clear that Title III was not intended to include complete voter registration lists. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 115 (2014) ("When two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other.").

Further, if Title III applies to voter registration lists, then it prohibits the very thing that the Plaintiff appears to want to use the data for – purging the voter registration lists according to the DOJ's determination of "eligible voters." [MOU at DN 9-11, Page# 268]. The DOJ does not state how it will determine who is eligible to vote, however, it will require Kentucky election officials

---

[2] See arguments contained by reference in DN 9 and DN 8-6.

to immediately purge those individuals deemed ineligible within 45 days. *Id.* Again, if Title III includes full voter registration lists, then the DOJ is asking Kentucky to sign an agreement promising to break federal law. This reading of Title III clearly creates an absurd result and should be avoided by this Court.

<u>II. The Privacy Act Prohibits Plaintiff From Gathering Information From Kentucky's Voter Registration List</u>

"A motion to dismiss can be premised on an affirmative defense, however, if "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *Marsh v. Genentech, Inc.*, 693 F.3d 546, 555 (6th Cir. 2012) (internal citations omitted). Illegality is one such affirmative defense. Here, the Privacy Act of 1974 ("Privacy Act") makes the Plaintiff's collection of Kentucky voter registration list illegal.

The Privacy Act "protect[s] the privacy of individuals identified in information systems maintained by Federal agencies[] by preventing the misuse of that information." *Thomas v. U.S. Dep't of Energy*, 719 F.2d 342, 345-346 (10th Cir. 1983). The statute bars federal agencies from "maintaining, collecting, using, or disseminating records" and "describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained." 5 U.S.C. §§ 552a(e)(7), (a)(3). The Privacy Act bars the Plaintiff from collecting Kentucky's full voter registration list and none of the exceptions apply.

**A. The Plaintiff's Demand is a Request for Data About the Exercise of Kentuckians' First Amendment Rights.**

A "record" under the definition of the Privacy Act is "any item, collection, or grouping of information about an individual that is maintained by [a federal] agency...and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual.

4

5 U.S.C. § 552a(a)(3). The Plaintiff's request for Kentucky's voter registration list meets this definition as it has requested full names, birthdays, addresses, and Social Security numbers or driver's license numbers. [Letter from DOJ dated August 14, 2025, DN 9-4, Page ID# 241].

The voter registration list clearly contains information about how Kentucky voters exercise their First Amendment rights. The Supreme Court has recognized that the choice to register to vote alone has First Amendment implications. *See Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999). Additionally, the full voter registration list contains information such as party affiliation and voter participation history, both having clear First Amendment implications. *See, e.g., Williams v. Rhodes*, 393 U.S. 23, 30 (1968) ("the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively" are quintessential examples of "freedom of association ... protected by the First Amendment.").

## B. Plaintiff Cannot Establish Any Exemption From the Privacy Act

The Privacy Act's bar against federal agency collection of information about an individual's exercise of First Amendment rights is subject to three exceptions: express statutory authorization, consent of the individual in question, or when the collection is "pertinent to and within the scope of an *authorized* law enforcement activity." 5 U.S.C. § 552a(e)(7) (emphasis added).

First, the Plaintiff has not (and cannot) point to any statute authorizing the collection of Kentucky's full and unredacted voter registration list. Second, the Plaintiff has not obtained consent from the more than 3.3 million Kentuckians whose information appears on the voter registration list. Finally, as discussed above and in the BOE and ACLU Defendants' Motions to

Dismiss, Title III does not authorize the Plaintiff to collect Kentucky's voter registration list. Thus, the Plaintiff's Complaint should be dismissed.

III. The Complaint Impermissibly Conflicts with the Constitutional Mandate for States to be Responsible for the Mechanics of Elections Subject to Preemption by Congress.

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) (citations omitted); *see also* U.S. Const. art. I, §4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility for determining voter eligibility and maintaining lists of eligible voters. *Id*. at 17.

Although Congress has passed certain laws governing voter registration, voter eligibility and list maintenance, specifically the NVRA and HAVA, both still provide that *states*—not the federal government—are in charge of the "administration of voter registration for elections of Federal office," including defining, maintaining, and administering voter lists. 52 U.S.C. §20507(1)(a), (c)-(g); 52 U.S.C. §21083(a)(1), (2); §21083(a)(1)(A). Most importantly, neither the NVRA or HAVA task the federal government with compiling a federal national voter registration list or micromanaging the states and election officers in their maintenance of their voter registration lists—especially when the Plaintiff's motives are unknown or ill-conceived and such voter information can easily be manipulated.

Because Congress has left it up to the States to "maintain accurate lists of those eligible to vote," the Plaintiff's demand for Kentucky's statewide voter registration list squarely conflicts with Kentucky law. *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018). Kentucky's election statutes establish a carefully balanced framework governing voter registration records— one that promotes transparency of basic voter information while strictly protecting confidential personal data. KRS 116.095; KRS 116.115. The statutes are designed to prevent the disclosure of

confidential personal information and, accordingly, the misuse of such information. Kentucky's election law framework was also created to ensure voter confidence and election participation by adopting zero tolerance measures for interfering with voter registrations, intimidating voters and interfering with the election officers in the discharge of their duties. KRS 119.045; KRS 119.155; KRS 116.995; KRS 119.035.

**A. Complying with the Plaintiff's Unlawful Demand Would Require Clerk Yates to Violate his Statutory Duties.**

Under state law, Clerk Yates is not merely a passive record holder; Clerk Yates has affirmative statutory duties to maintain accurate voter registration records, protect the integrity of those records, and ensure that confidential voter information is not improperly disclosed. The Plaintiff's requested relief would directly interfere with—and indeed require breach of—those duties.

i. Compliance would require Clerk Yates to violate his Oath of Office.

Clerk Yates is the chief election official in Jefferson County and the primary custodian, creator, and administrator of Jefferson County voter registration records under Kentucky law. Clerk Yates bears statutory duties pursuant to KRS 116.045 relating to voter registration processing, list maintenance, records retention, data accuracy and protection of confidential voter information. Integrated into those duties is Clerk Yates' legal responsibility for ensuring that sensitive voter information is not disclosed in a manner that compromises voter privacy, exposes individuals to identity theft, fraud or other misuses of personal information. KRS 116.095 (requiring redaction of social security number if included on registration form); *see also* KRS 61.878(1)(a); *See e.g.*, *Kentucky New Era, Inc. v. City of Hopkinsville,* 415 S.W.3d 76, 85 (Ky. 2013).

Clerk Yates also has a duty to maintain the integrity of Jefferson County's voter registration system. Clerk Yates must ensure that voter records are securely maintained, used only for authorized purposes and protected against misuse. KRS 116.045; KRS 116.095. Clerk Yates is required to ensure that voter registration information is properly recorded and preserved as part of Jefferson County's official election records. KRS 116.045(5). Clerk Yates took a sworn oath to faithfully execute these statutory duties and. by demanding unredacted production of Kentucky's statewide voter registration list for unclear purposes, the Plaintiff is effectively asking Clerk Yates to abandon these statutory safeguards and attempting to undermine his obligation and remove his ability to ensure lawful downstream use. KRS 62.010; Ky. Const. § 228.

ii. Compliance with the Plaintiff's Complaint would expose Clerk Yates to legal liability.

Compliance with the Plaintiff's request for voter registration lists and private voter data, particularly when the Plaintiff's use of such information is unclear or ill-conceived, would expose Clerk Yates to potential state-law liability for unlawful disclosure under Kentucky's election law framework, open records laws and/or privacy laws. Each of these laws, respectively, prohibit the disclosure of private information and/or unwarranted invasions of personal privacy of Jefferson County citizens. *See e.g.*, *Kentucky New Era, Inc.*, 415 S.W.3d at 85; *see also* KRS 116.095; KRS 61.878(1)(a)

Additionally, compliance could lead to constitutional claims by voters against Clerk Yates due to burdens on their First and Fourteenth Amendment Rights. Compliance with the Plaintiff's demand would expose voters to privacy risks implicated by the release of the unredacted statewide voter registration list and, as previously explained, could deter citizens from registering to vote, which is a fundamental right, "preservative of all rights". <u>League of Women Voters of Ohio v. Brunner</u>, 548 F.3d 463, 477 (6th Cir. 2008) (citations omitted).

8

**B. Compliance Would Create a Burden on Election Officials, like Clerk Yates.**

The Plaintiff's demand is not merely a records request—it has direct operational consequences for election administration. According to comprehensive reporting on the DOJ's campaign for statewide voter registration lists, DOJ staff indicated that the federal government is most interested in obtaining the last four digits of every voter's Social Security number and will work with Homeland Security to compare such information to immigration lists.[3] State and city election officials have no idea if these immigration lists are accurate, up to date, or reliable, and the comparison would cause a great deal of falsely identified ineligible voters, mistakes, inaccuracies and, subsequentially, chaos.[4] Additionally, experts advise that the data on the SVRLs can be easily manipulated to support false claims about ineligible voting and justify efforts to thwart free and fair elections.[5]

This federal overreach to update Kentucky's voter registration list will clearly lead to Jefferson County records or information coming back from the DOJ's possession with inaccuracies, out of date information, and false positives regarding ineligible voters, data errors and potential breaches of voter information. It will disrupt Kentucky's established processes for maintaining voter rolls, verifying information, and responding to lawful data requests. In turn, Clerk Yates will likely have to divert office resources from core election functions to handle these unnecessary disruptions and correct voter registration records.

**C. The Plaintiff's Demand Violates Kentucky Law.**

i. Compliance would violate Kentucky's privacy laws.

---

[3] *Id.*

[4] Nick Corasaniti, Why is the Trump Administration Demanding Minnesota's Voter Rolls? The New York Times, January 26, 2026, https://www.nytimes.com/2026/01/26/us/politics/minnesota-trump-voter-rolls.html.

[5] *Id.*

9

The Plaintiff's request would require disclosure of driver's license numbers, partial social security numbers and other uniquely identifying data tied to individual voters. These are precisely the categories of information that Kentucky law treats as confidential and protects from disclosure, even where other voter information may be publicly accessible. *See e.g.*, *Kentucky New Era,* 415 S.W.3d at 85. KRS 116.095; KRS 61. 878(1)(a). The disclosure of such private information can also lead to risks such as identify theft, fraud, and targeted scams or phishing. Thus, compliance with the Plaintiff's demand would place Kentucky election officials—and in particular county clerks—in an untenable position of violation state law in order to comply with a disputed federal request.

ii. Compliance would lead to election offenses under KRS Chapter 119.

Under Kentucky law, it is a criminal offense to interfere with a registration officer "in carrying out his duties with relation to the registration of voters." KRS 119.045. Here, as previously mentioned, compliance with the Plaintiff's demand will clearly interfere with Clerk Yates' duties regarding registration of voters. Clerk Yates is the chief election officer in Jefferson County that registers all Jefferson County voters and maintains and administers such registration forms. Interference by the Plaintiff dictating how Clerk Yates maintain voter registrations lists will disrupt Clerk Yates' registration duties, as such interference will likely lead to inaccurate records and unnecessary burdens and will affect resource allocation.

Perhaps most critically, compelled disclosure of sensitive voter data has a chilling effect on voter registration. It has been widely publicized that the DOJ seeks this voter information to create a national voter database that will be used to try to substantiate President Trump's unfounded accusations that millions of non-citizens voted illegally in recent elections or to

10

discredit future elections.[6]  If the Plaintiff is granted its requested relief, the disclosure of private and personal voter information will likely frighten and intimidate many Jefferson County voters from engaging in the voting process due to distrust and fear of misuse of their personal information. Such intimidation is illegal under Kentucky's election laws and the Plaintiff should not be permitted to engage in such action. KRS 119.155.

**CONCLUSION**

Wherefore, Jefferson County Clerk David Yates respectfully requests this Court dismiss the Department of Justice's Complaint [DN 1] pursuant to FRCP 12(b)(6).

Respectfully,

MICHAEL J. O'CONNELL
JEFFERSON COUNTY ATTORNEY

/s/ *Sarah J. Martin*
Sarah J. Martin
Natalie Johnson[7]
Kathryn Goodwin[8]
Assistant Jefferson County Attorneys
200 S. Fifth St., Ste 300N
Louisville, Kentucky 40202
(502) 574-4307
Natalie.Johnson@louisvilleky.gov
Kathryn.Goodwin@louisvilleky.gov
Sarah.martin@louisvilleky.gov
*Counsel for Jefferson County Clerk David Yates*

---

[6] *See e.g*., Devin Barrett & Nick Corasaniti, Trump Administration Quietly Seeks to Build National Voter Roll, New York Times, September 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[7] Natalie Johnson applied for admission to the Eastern District of Kentucky on March 6, 2026. Attorney Johnson will happily submit a pro hac vice motion to represent Jefferson County Clerk Yates should the Court request her to do so.

[8] Kathryn Goodwin applied for admission to the Eastern District of Kentucky on March 6, 2026. Attorney Goodwin will happily submit a pro hac vice motion to represent Jefferson County Clerk Yates should the Court request her to do so.

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2026, I filed this motion with the Clerk of this Court using the Court's CM/ECF system, which will send notification to all registered parties

/s/ Sarah J. Martin