UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:26-cv-00019-CHB-EBA |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| MICHAEL ADAMS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Kentucky State Board of Elections' Motion to

Dismiss, [R. 9], Defendant Michael Adams Motion to Dismiss, [R. 33], and the Intervenors-

Defendants' Motions to Dismiss, [R. 29]; [R. 36]; [R. 38], as well as Plaintiff United States'

Motion to Compel, [R. 26].  These matters have been fully briefed and are ripe for review.  For

the reasons set forth below, the Court will grant the Motions to Dismiss and deny as the Motion to

Compel.

## I.  BACKGROUND

This case is one in a series of actions brought by the United States against nearly every

State, seeking voter registration information from states and localities.  The facts that give rise to

this particular action begin on July 17, 2025, when the United States first contacted Michael

Adams, Kentucky Secretary of State and Chief Election Official of the Commonwealth, seeking

"information regarding Kentucky's compliance with federal election law."  [R. 1, ¶ 20.]  On July

23, 2025, Secretary Adams responded, indicating that the Kentucky State Board of Elections

maintained Kentucky's statewide voter registration list (SVRL).  *Id.* ¶ 21.  On August 8, 2025, the

United States sent the letter again, this time to the Kentucky State Board of Elections.  *Id.* ¶ 22.

On August 14, 2025, the United States sent a third letter requesting that the Kentucky State Board of Elections turn over its SVRL, and further requested that Kentucky's response contain "all fields, including full name, date of birth, address, and driver's license or last four digits of social security numbers" of each registered voter.  *Id.* ¶ 24.  As the authority for its request, the United States cited the National Voter Registration Act, the Help America Vote Act, and the Civil Rights Act. *Id.* ¶25.

On August 22, 2025, the Defendants requested further clarification of the United States' request, specifically requesting assurances as to how the United States intended to comply with the Privacy Act and the Driver's Privacy Protection Act.  *Id.* ¶ 27.  Then, on December 2, 2025, the United States sent a Memorandum of Understanding to the Defendants which the United States asserts would have "satisfied all reasonable concerns regarding privacy and data security."  *Id.* ¶ 28.  The Defendants declined to sign the Memorandum, and have otherwise rejected the United States' demands, prompting the United States to file this action.  *Id* ¶ 33.

On February 26, 2026, the United States initiated this action against Michael Adams, in his official capacity as Kentucky Secretary of State and as Chief Election Official for the Kentucky State Board of Elections, as well as several other members of the Kentucky State Board of Elections.  *Id.* ¶ 9.  The United States seeks declaratory as well as injunctive relief.  [R. 1, p. 9]. The United States has also filed a Motion to Compel disclosure of the records under Title III of the Civil Rights Act.  [R. 26].

Several organizations and individuals moved to intervene as Defendants in this action, asserting that their rights would be impaired by a ruling in favor of the United States.  [R. 3]; [R. 8]; [R. 17].  The Court granted the motions, allowing the Intervenor-Defendants to intervene permissively.  [R. 34].  The Defendants and Intervenor-Defendants filed Motions to Dismiss,

arguing that the records sought by the United States were not within the scope of the Civil Rights Act, and the United States did not otherwise comply with the Civil Rights Act in seeking the records. [R. 9]; [R. 29]; [R. 33]; [R. 36]; [R. 38]. The parties filed consolidated responses and replies, pursuant to the Court's Order, [R. 32], and the Motions are all now ripe for review.[1] [R. 39]; [R. 42]; [R. 43]; [R. 44] [R. 45]; [R. 46]; [R. 47]; [R. 48]; [R. 49]; [R. 50]. For the reasons that follow, the Court will grant the Defendants' and Intervenor-Defendants' Motions to Dismiss and deny as moot the United States' Motion to Compel.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause

---

[1] The United States has asked this Court to hold ruling in this case in abeyance pending its petition to the Sixth Circuit for *en banc* review of its recent decision in *United States v. Benson*, 179 F.4th 470 (6th Cir. 2026). [R. 58]. The Court declines this request as the Sixth Circuit issued an opinion resolving the dispositive issue in this case, and this Court is "bound to follow relevant precedent from the Sixth Circuit unless and until the Sixth Circuit decides to revisit that precedent." *Viviali v. One Point HR Solutions, LLC*, 2025 WL 1158740, at *4 (E.D. Ky. Apr. 21, 2025) (internal citation omitted).

3

of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

III.    ANALYSIS

A.  Statutory Background

This case concerns three federal statutes which affect States' administration of federal elections. First, Title III of the Civil Rights Act of 1960 contains several provisions relevant to this dispute. Title III requires every election officer to retain "for a period of twenty-two months from the date of any [federal] election . . . all records and papers which come into [the official's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. The Act further authorizes criminal penalties for "[a]ny person . . . who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by section 20701 of this title to be retained and preserved." *Id.* § 20702. Relevant here, records and papers subject to Title III must be "made available for inspection, reproduction, and copying" by the Attorney General, if the Attorney General makes a "demand in writing" that specifies "the basis and purpose" for the inspection. *Id.* § 20703.

Next, the National Voter Registration Act of 1993 requires States, *inter alia*, to make "a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters"

by reason of death or change of address.  52 U.S.C. §20507(a)(4).  The NVRA also permits States to remove voters from voter rolls at their request or, "as provided by State law, by reason of criminal conviction or mental incapacity."  *Id.* § 20507(a)(3)(A)-(B).  As a means of enforcement, the NVRA requires States to "maintain for at least 2 years and . . . make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  *Id.* §20507(i)(1).  Additionally, each State must "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under [the NVRA]."  *Id.* § 20509.

Finally, the Help America Vote Act of 2002 requires States to create a "single, uniform, official, centralized, interactive computerized statewide voter registration list. . .that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State."  52 U.S.C. § 21083(a)(1)(A).  Further, "[i]f an individual is to be removed from the computerized list, such individual shall be removed in accordance with the provisions of the National Voter Registration Act of 1993."  *Id.* § 21083(A)(2)(A)(i).  HAVA further requires individuals to provide their driver's license number or the last four digits of their social security number to register to vote in a federal election, unless the individual has neither, in which case they are identified using a unique identifier alone.  *Id.* § 21083(a)(5)(A).

### B.  Applicability of the Federal Rules of Civil Procedure

As a threshold inquiry, the parties dispute whether the Federal Rules of Civil Procedure apply to this action.  The United States argues that the Federal Rules of Civil Procedure do not apply in a proceeding to compel documents requested under Title III of the Civil Rights Act.  [R.

5

39 at 5-10.]   Thus, the United States contends that the Defendants may not challenge the sufficiency of the Complaint under Rule 12(b)(6) and urges the Court to enter an order compelling the production of the requested documents before the case may proceed.  *Id.*

Broadly speaking, the Federal Rules of Civil Procedure "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings."  Fed. R. Civ. P. 81(a)(5).  There is no provision in the Civil Rights Act, nor this Court's Local Rules that precludes application of the Federal Rules of Civil Procedure to this action, nor has the Court entered any order to that effect.  Nevertheless, the United States cites a sixty-year-old out-of-circuit case, *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), to support its position that the Federal Rules are inapplicable.

In *Lynd*, the Fifth Circuit considered a motion to compel under the Civil Rights Act and concluded that the Court must conduct "a special statutory proceeding" which "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure."  306 F.2d at 225-26.  However, two years later, the United States Supreme Court reached a contrary result.  *See United States v. Powell*, 379 U.S. 48 (1964). In *Powell*, the Supreme Court considered administrative summonses under two different statutes that provided the Court "shall have jurisdiction by appropriate process," language identical to that in the Civil Rights Act.  *Id.* at 58 n. 18 (citing 26 U.S.C. § 7604(a)); 52 U.S.C. § 20705.  In interpreting this provision, the Supreme Court concluded that because the statutes contained no provision specifying a procedure, the Federal Rule of Civil Procedure applied.  *United States v. Powell*, 379 U.S. 48, 58 n. 18 (1964). The Civil Rights Act does not contain a provision specifying a procedure but rather contains the "by appropriate process" language at issue in *Powell*.  *Id.*; 52 U.S.C. § 20705.

6

Thus, in accordance with *Powell*, and every other district court that has considered this issue, the Court finds the Federal Rules of Civil Procedure applicable to this action. *See United States v. Oliver*, 2026 WL 2031479, at *7 (D.N.M July 14, 2026); *United States v. Koski*, 2026 WL 2032532, at *2 n. 2 (E.D. Va. July 14, 2026); *United States v. Bd. of Elec. of the State of New York¸*2026 WL 1999921 (N.D.N.Y. July 10, 2026); *United States v. DeMarinis*, 2026 WL 1780586, at *3 (D. Md. June 18, 2026); *United States v. Fontes*, --- F.Supp.3d ----, 2026 WL 1177244, at *1 (D. Ariz. Apr. 28, 2026); *United States v. Amore*, --- F.Supp.3d ----, 2026 WL 1040637, at *4 (D.R.I. Apr. 17, 2026); *United States v. Benson*, 819 F.Supp.3d 753, 766 (W.D. Mich. 2026) *aff'd* 179 F.4th 470 (6th Cir. 2026)[2]; *United States v. Oregon*, --- F.Supp.3d ----, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026); *United States v. Weber*, 816 F.Supp.3d 1168, 1182 (C.D. Cal. 2026).

Further, at least three district courts have noted that the Court's analysis would not change even if the Court followed *Lynd* and concluded that Federal Rules of Civil Procedure are inapplicable. *See Lynd*, 306 F.2d at 226; *Oliver*, 2026 WL 2031479, at * 7 n. 17; see also *DeMarinis*, 2026 WL 1780586, at *4 (citing *United States v. Wis. Elections Comm'n*, --- F. Supp.3d ----, 2026 WL 1430354, at *2 (W.D. Wis. May 21, 2026) (noting that *Lynd* indicates that the court must decide as a matter of later whether the records are properly subject to Title III). Accordingly, the validity of the United States' claim will be analyzed under Rule 12(b)(6).

---

[2] Although the Sixth Circuit did not squarely address whether the Federal Rules of Civil Procedure apply to an action under Title III of the Civil Rights Act, it affirmed the Western District of Michigan's dismissal of the Complaint under Rule 12(b)(6). *Benson*, 170 F.4th at 483. Further, elsewhere in the opinion, the Sixth Circuit cited *Powell* favorably and rejected the United States' and the dissent's reliance on *Lynd*. *Id.* n. 2.

### C.  Title III of the Civil Rights Act of 1960

The Defendants and Intervenor-Defendants raise several overlapping arguments in support of their motions to dismiss.  Chiefly, the Defendants assert that the records sought by the United States are not subject to disclosure under Title III because those records do not "come into" the election officials' possession within the proper meaning of that phrase.  [R. 9 at 11-15]; [R. 33 at 8-10]; [R. 36 at 17-18].  Further, the Defendants argue that the United States has not adequately stated its basis and purpose for the request, as required by Title III.  [R. 9 at 15-19]; [R. 33 at 6-8]; [R. 36 at 12-17].   In considering a nearly identical factual predicate, the Sixth Circuit squarely resolved these issues in favor of the Defendants.  *See Benson*, 170 F.4th 470.  Because the facts and issues in this case mirror that of *Benson*, the Court here reaches the same result.

### 1.  Come Into Possession

As noted above, Title III applies to records and papers which "come into [the] possession" of election officials.  Although no party disputes that Kentucky's SVRL is a "record," the parties vigorously dispute whether these records "come into [the] possession" of election officials.  The parties also do not dispute that election officials in Kentucky create the SVRL, rather than receiving it from an external source.  Mere weeks ago, the Sixth Circuit held that Michigan's statewide voter registration list, which is similarly created by election officials, rather than received from a third party, does not "come into [the] possession" of election officials for purposes of Title III.  *Benson*, 170 F.4th at 478-82.

In reaching this conclusion, the Sixth Circuit first analyzed the text of Title III in accordance with its ordinary meaning.  *Id.* at 478-79.  In so doing, it found that at the time Congress enacted Title III, "come into. . .possession" meant "acquire," "obtain," or "receive."  *Id.* at 478.  The Sixth Circuit further held that these terms necessarily imply that to "come into. . .possession"

meant to acquire the record from a third party, rather than creating it oneself. *Id.* at 479 ("An ordinary English speaker would not say that she has come into possession of something that she created, established, and maintained."). Thus, a voter file generated by State election officials does not "come into" that official's possession, as that term is ordinarily understood. *Id.*

The Sixth Circuit further concluded that the statutory context confirmed its holding, particularly considering both the harmonious-reading and surplusage canons of statutory construction. *Id.* at 479-80. Under the harmonious-reading canon, the Sixth Circuit noted that Title III of the Civil Rights Act permits criminal penalties for anyone who "willfully steals, destroys, conceals, mutilates, or alters" any record that Title III requires election officials to retain and preserve. *Id.* at 479 (quoting 52 U.S.C. § 20702)). However, the NVRA and HAVA both "*require* [State] election officials to alter the qualified voter file routinely as part of their 'reasonable efforts[s] to ensure accuracy.'" *Id.* (quoting 52 U.S.C. §§20507(a)(4), 21083(a)(4)(A)). Thus, in the Sixth Circuit's view, "construing § 20701 in a manner that subjects the qualified voter file to Title III would place Title III on a collision course with the NVRA and HAVA." *Id.* at 480. Put simply, reading Title III consistent with the United States' position would impose potential criminal liability on election officials for taking statutorily mandated actions. Such a reading does not comport with the Supreme Court's instruction to, whenever possible, "interpret Congress's statutes as a harmonious whole rather than at war with one another." *Id.* (quoting *Epic Sys. Corp v. Lewis*, 584 U.S. 497, 502 (2018)).

Additionally, under the surplusage canon, the Sixth Circuit found that adopting the United States' construction of Title III, subjecting all voting records and papers in the election officials' possession to Title III, would render the phrase "come into" superfluous. *Id.* (quoting *Dep't of Agric. Rural Dev. Hous. Serv. v. Kirtz*, 601 U.S. 42, 53 (2024)) ("Proper respect for Congress

cautions courts against lightly assuming that any of the statutory terms it has chosen to employ are superfluous or void of significance."). The Sixth Circuit noted that in the NVRA, Congress used the phrase "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Benson*, 170 F.4th at 480 (quoting 52 U.S.C. § 20507(i)(1)). On the contrary, in Title III, "Congress used the narrower language—'all records and papers which come into h[is] possession.'" *Benson*, 170 F.4th at 480 (quoting 52 U.S.C. § 20701). Thus, reading "come into his possession" to mean only those records and paper that election officials "obtain, acquire, or receive allows 'come into [his] possession' to do real work." *Id.*

In light of the foregoing, the United States' claim must fail. The United States makes several counterarguments which mirror those that the Sixth Circuit rejected in *Benson*. [R. 39 at 17-18]; *Benson*, 170 F.4th at 480-82 (rejecting all of the United States counterarguments as unpersuasive). Given this binding Sixth Circuit precedent, the Court here reaches the same result: Kentucky's SVRL does not "come into" the possession of Kentucky election officials and is not a record or paper subject to Title III of the Civil Rights Act.

### 2. Basis and Purpose

Although the Sixth Circuit could have rested its decision on the above basis alone, the Sixth Circuit further held that the United States' claim failed for an independent reason. Title III of the Civil Rights Act requires election officials to produce "[a]ny record or paper required by section 20701. . .upon demand in writing by the Attorney General or his representative." 52 U.S.C. § 20703. Under Title III, this demand "shall contain a statement of the basis and purpose therefor." *Id.* In *Benson*, the Sixth Circuit, departing from the district court's holding on the issue, held that the United States could not point to a Title III demand which stated both a basis and a purpose

10

therefor.  170 F.4th at 482-83.  In reaching this conclusion, the Sixth Circuit considered three letters sent by the government to Michigan's chief election official, Jocelyn Benson.  *Id.*  Two of the letters sent to Benson referenced the NVRA and HAVA as the authority for the request but omitted any mention of Title III.  *Id.*  The third letter referenced Title III and "specified the purpose for the government's request," but did not indicate the basis.  *Id.*

As for the first two letters, the Sixth Circuit held that, even assuming the letters contained a sufficient basis for the demand, they did not identify a purpose.  *Id.*  Regarding the third letter, the Sixth Circuit found that it specified a purpose, but contained no basis for the request.  *Id.*  Thus, [n]one of the three letters contains both a statement of the basis along with the purpose of the government's request for Michigan's qualified voter file.  *Id.*  This proved problematic in the Sixth Circuit's view because "[t]he statutory context suggests that any demand must contain both [a basis and a purpose]."  Thus, the Sixth Circuit found that the government's noncompliance with "its mandatory statutory obligation" provided an independent basis to dismiss the complaint.  *Id.*

In the instant case, the government sent three letters to Kentucky election officials, which appear nearly identical to those sent to Jocelyn Benson.  The first letter, addressed to Secretary Adams, and sent on July 17, 2025, sought "information regarding the Commonwealth's procedures for complying with the statewide voter registration list maintenance provisions of the [NVRA]." [R. 9-2 at 2.]  This letter primarily requested a list of election officials responsible for voter registration list maintenance, as well as the steps taken to ensure compliance with the NVRA.  *Id.*  The letter sent to the KSBE on August 8, 2025, merely directed the July 17 letter to the attention of the KSBE, instead of Secretary Adams.  [R. 9-3.]

In accordance with the Sixth Circuit's holding, the instant letters' general reference to the NVRA and HAVA similarly fail to state a purpose for the demand, even assuming the letters stated

11

a basis for the request. *See Benson*, 170 F.4th at 483. Similarly, the third letter, sent on August 14, 2025, mentions the Civil Rights Act and provides that the purpose of the request is to ascertain compliance with the NVRA and HAVA, but does not specify a basis for the request. [R. 9-4.] Thus, the United States cannot point to a written demand that contains both the basis and purpose for the request. Consequently, because the United States did not comply with its mandatory statutory obligation to submit a demand to the Defendants containing a statement of both the basis and purpose of its request, the Defendants did not violate Title III by refusing to produce Kentucky's SVRL to the government.

## IV.   CONCLUSION

For the reasons set forth above, the Court will grant the Defendants' Motions to Dismiss and deny the United States' Motion to Compel. Accordingly, and the Court being sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The Defendants' Motions to Dismiss, **[R. 9; R. 29; R. 33; R. 36; R. 38],** are **GRANTED**.

2. The United States' Motion to Compel, **[R. 26]**, is **DENIED.**

3. This matter is **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket.

4. A separate judgment shall follow.

This the 23rd day of July, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY